UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION |
| | NO. 19-12874 |
| VERSUS | |
| | SECTION M (3) |
| T&T SUBSEA, LLC | |

## ORDER & REASONS

Before the Court is a motion by defendant T&T Subsea, LLC ("T&T") for summary judgment seeking dismissal of plaintiff's claim against it.[1] Plaintiff the United States Equal Employment Opportunity Commission ("EEOC") responds in opposition,[2] and both parties file replies in further support of their respective positions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies T&T's motion, finding that there are disputed issues of material fact that preclude summary judgment.

**I.    BACKGROUND**

This case involves an allegation of employment discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, *et seq.* T&T is a company that provides support to marine operators through performing underwater welding services, hull cleanings, propeller repairs, and inspection services.[4] Jason Woods has been a commercial diver since 2013 and holds various international certifications.[5] In April 2015,

---

[1] R. Doc. 19.
[2] R. Doc. 25.
[3] R. Docs. 30 & 33.
[4] R. Doc. 19-2 at 1.
[5] R. Doc. 25-2 at 1-2.

Woods applied for, and was hired in, a diver/tender position at T&T.[6] Woods started working full time at T&T in July 2015.[7]

On November 26, 2016, Woods was diagnosed with colorectal cancer.[8] Woods informed Suzanne Upchurch, T&T's human resources director, of his diagnosis and treatment plan.[9] From mid-December 2015 to early January 2016, Woods received daily chemotherapy and radiation treatments.[10] During this time, he continued to work his regular hours at T&T performing tender duties, assisting the divers and working land-side in the shop.[11] On February 11, 2016, Wood's oncologist, Dr. Kanwal Raghav, gave Woods a full medical release to return to work without restrictions until his surgery, which was planned for April 2016.[12] Woods gave Dr. Raghav's note to Upchurch, and Woods returned to full diving duties.[13]

Prior to his surgery, at Upchurch's direction, Woods applied for unpaid leave under the Family Medical Leave Act ("FMLA") and unemployment benefits.[14] On April 15, 2016, Woods underwent a successful surgery to remove the cancerous tissue.[15] Part of Wood's large intestine was removed, and he had to wear an ileostomy bag.[16] On May 23, 2016, Dr. Raghav cleared Woods to return to work with the restriction of no diving.[17] Woods provided Dr. Raghav's release to Upchurch, but rather than placing him in a non-diving position, as before, Upchurch

---

[6] *Id.* at 2-3. In surface-supplied air diving, "the diver's breathing gas is supplied from the surface by the tender," who serves as the diver's "life-line" by keeping communication with and assisting the diver from the surface to ensure his safety. *Id.*
[7] *Id.* at 2.
[8] *Id.* at 3.
[9] *Id.* at 3-5.
[10] *Id.* at 4.
[11] *Id.* at 3-5. Woods described shop duties as follows: "This non-diving work was frequent, and it consisted of, among other things, maintenance and repair work of power tools, forklifts, dive equipment, and the necessary prep work before a dive operation and the clean-up and restoration after one." *Id.* at 3.
[12] *Id.* at 4-5.
[13] *Id.* at 5.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 6.

2

insisted that Woods remain on unpaid FMLA leave.[18]

On September 14, 2016, Woods underwent a successful surgery to remove the ileostomy bag.[19] Two weeks later, on September 27, 2016, Woods had a follow-up visit with his surgical oncologist, Dr. Miguel Rodriguez-Bigos, at which Woods asked Dr. Rodriguez-Bigos to complete, as he deemed appropriate, an Association of Diving Contractors International ("ADCI") medical history and examination form for Woods.[20] Dr. Rodriguez-Bigos noted that Woods would likely be "cleared to dive" within four weeks.[21]

Thereafter, Woods updated Upchurch that he soon intended to return to work.[22] Upchurch told Woods that Jack Larkin, T&T's general manager, would call him back.[23] That same day, Larkin called Woods and fired him stating that under the ADCI guidelines Woods's cancer and treatment would preclude him from passing the dive physical.[24] Woods, to no avail, insisted that he could get medical clearance to work.[25] Upchurch subsequently confirmed to Woods that he was fired.[26] No one from T&T instructed Woods to have a medical examination or dive physical to assess his ability to work safely as a diver, nor did anyone discuss with him the possibility of a reasonable accommodation, such as working as a tender or in the shop.[27]

About a month later, in October 2016, Dr. Rodriguez-Bigos gave Woods a full medical release to work with no restrictions.[28] On November 9, 2016, Woods, at the request of a prospective employer, C-Dive, underwent an ADCI medical examination and was deemed fit for

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 6-7.
[25] *Id.* at 7.
[26] *Id.*
[27] *Id.*
[28] *Id.*

3

diving.[29] Since November 2016, Woods has worked as a diver for C-Dive and several other companies.[30] He remains cancer-free.[31]

On March 27, 2017, Woods filed a charge of discrimination with the EEOC alleging that T&T discriminated against him based on disability – his cancer and treatment.[32] In response to the charge, T&T did not dispute that Woods's medical condition constitutes a disability under the ADA.[33] Instead, T&T took the position that it did not discriminate against Woods, but rather that:

> [Woods] was discharged because he could no longer perform the essential functions of his job, specifically he could not obtain a work release allowing him to dive underwater, pass his post-treatment dive physical or obtain the Association of Diving Contractors International (ADCI) certification required of a Diver/Tender working for T&T Subsea.[34]

T&T stated that all divers must meet the requirements of its safe practices and operations manual ("diver's handbook") and the ADCI international consensus standards ("consensus standards" or "guidelines").[35] Because T&T's diver's handbook states that a significant malignancy disqualifies a person from diving, and because, according to T&T, Woods's physicians never released him to work as a diver, T&T urged that he could not perform an essential function of the job.[36]

Similarly, the ADCI consensus standards provide:

> A person having any of the following conditions, as determined by a physician's examination, shall be disqualified from engaging in diving or other hyperbaric activities.
>       ….

---

[29] *Id.* at 7-8.
[30] *Id.* at 8.
[31] *Id.*
[32] R. Doc. 19-7.
[33] R. Doc. 19-8 at 4.
[34] *Id.* at 1.
[35] *Id.* at 2.
[36] *Id.* at 4.

4

- Any person engaged as a diver, or otherwise exposed to hyperbaric conditions, will have a medical evaluation following any non-diving injury or illness that requires any prescription medication, any surgical procedure or any hospitalization.

- Untreated or persistent/metastatic or other significant malignancies including those that require chemotherapy and/or radiation therapy unless five years after treatment with no evidence of recurrence.[37]

Accordingly, in its response to the discrimination charge, T&T contended that Woods's recent chemotherapy and radiation treatment disqualified him from working as a diver.[38] T&T further argued that Woods's cancer treatments "constitute a substantial risk of harm to [Woods] should he be subjected to the intense pressure of underwater diving," and that under the ADCI consensus standards quoted above, Woods was terminated to protect his safety and the safety of other divers.[39]

The EEOC conducted an investigation, and on June 27, 2019, issued to T&T a letter of determination finding reasonable cause that T&T violated the ADA by terminating Woods without first engaging in the interactive process of determining whether Woods could perform the essential functions of his job with or without a reasonable accommodation.[40] The EEOC noted that T&T, before firing him, asked its own physician if Woods would be qualified to dive following his cancer treatment, and the physician, without reviewing Woods's medical records or examining him, concluded that Woods would be disqualified from diving under the ADCI guidelines.[41] And, said the EEOC, T&T refused to rehire Woods after his treating physicians cleared him to dive, "because it again ostensibly assumed that he would not be considered fit for

---

[37] *Id.* at 5; R. Doc. 25-13 at 8.
[38] R. Doc. 19-8 at 5.
[39] *Id.*
[40] R. Doc. 19-9 at 1-3.
[41] *Id.* at 2.

duty if he were to undergo a medical examination by [T&T's] physicians."[42] The EEOC concluded that, based on the totality of the evidence, there was:

> reasonable cause to believe that [T&T] violated the ADA when it discharged and refused to hire Mr. Woods because of his disability. The [EEOC] further finds that [T&T] violated the ADA by virtue of its policies and/or practices of (1) requiring employees to be 100%-healed/free of restrictions to be permitted to return to work, (2) using an unlawful qualification standard with regard to the ADCI criteria … and (3) systematically refusing to provide or to consider providing reasonable accommodation relating to items (1) and (2) immediately above.[43]

The EEOC invited Woods and T&T to join with it in informal methods of conciliation to resolve the matter.[44]

The efforts at conciliation were unsuccessful, and on August 22, 2019, the EEOC issued a notice of its determination that "further conciliation efforts would be futile or non-productive."[45] Thereafter, on September 30, 2019, the EEOC filed this action against T&T for violation of the ADA in discriminating against Woods, seeking compensation for Woods and an injunction against the allegedly unlawful employment practices.[46]

## II. PENDING MOTION

T&T filed the instant motion for summary judgment arguing that it did not discriminate against Woods, but rather fired him because his cancer and subsequent treatment disqualified him from diving for five years pursuant to the ADCI consensus standards.[47] T&T argues that the EEOC cannot prove a *prima facie* case of disability discrimination because Woods is not qualified for the job of diver under the ADCI consensus standards.[48] T&T also notes that

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] R. Doc. 19-10.
[46] R. Doc. 1 at 1-6.
[47] R. Doc. 19-1 at 5-7.
[48] *Id.* at 10-11.

6

Woods's own doctor restricted him from diving for a time.[49] Further, T&T argues that Woods acknowledged and agreed to adhere to all ADCI guidelines, including that he could not be a diver if he developed cancer and underwent chemotherapy.[50]

In opposition, the EEOC argues that summary judgment is not warranted because T&T cannot rely on the ADCI guidelines to justify its actions towards Woods since such conduct is governed first and foremost by the ADA and its implementing regulations.[51] The EEOC also argues that T&T's admission it fired Woods because of his disability is direct evidence of discrimination, so the *McDonnell Douglas* burden-shifting framework does not apply and the EEOC does not have to prove pretext.[52] Instead, says the EEOC, discrimination is proved, and the jury need only determine whether T&T can prevail on its affirmative defenses: (1) that Woods was a direct threat under the terms of the ADA, and (2) the qualification standard T&T invokes (*viz.,* the provision of the ADCI consensus standards) is job-related and consistent with business necessity.[53] Further, the EEOC argues that, even if the *McDonnell Douglas* burden-shifting framework did apply, T&T is incorrect that Woods is not a qualified individual because he undoubtedly possessed the knowledge and skills to work as a diver.[54] According to the EEOC, there are disputed fact issues that preclude summary judgment on the affirmative defenses and the question of Woods's qualification to do his job. Finally, the EEOC argues that, if it had to prove pretext, which it submits it does not, there are disputed issue of material fact regarding whether T&T uniformly applied the ADCI guidelines, which could demonstrate

---

[49] *Id.* at 12.
[50] *Id.*
[51] R. Doc. 25 at 10-11.
[52] *Id*. at 11-12.
[53] *Id.* at 15-20.
[54] *Id.* at 12-14.

pretext.[55]

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are

---

[55] *Id.* at 20-21. The EEOC, in the alternative, moves under Rule 56(d) to defer consideration of T&T's motion for summary judgment while discovery is ongoing. *Id.* at 21-22. It is unnecessary to address this alternative motion because the Court denies summary judgment based on the record before it at this time.

insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

B. **The ADA**

"The ADA is a federal antidiscrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities

that are available to persons without disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 161 (5th Cir. 1996). The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to ... discharge ...." 42 U.S.C. § 12112(a).

In an ADA action for improper termination, the EEOC may either present direct evidence that the complaining employee was discriminated against because of his disability,[56] or in the absence of direct evidence of discrimination, proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case.[57] *See LHC Grp., Inc.,* 773 F.3d at 694; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). Evidence is direct if it is probative of the employer's discriminatory animus without requiring an inference. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019); *Rachid*, 376 F.3d at 310 n.6 (direct evidence "is evidence that if believed, proves the fact of discriminatory animus without inference or presumption"). "If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment

---

[56] The term "disability" is defined under the ADA, "with respect to an individual," as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment ...." 42 U.S.C. § 12102(1). It is undisputed that colorectal cancer is a disability under the ADA. *See id.* § 12102(2)(B) (major life activities include "the operation of a major bodily function, including but not limited to … normal cell growth, digestive, [and] bowel … functions").

[57] The *McDonnell Douglas* burden-shifting framework requires the EEOC to first establish a *prima facie* discrimination claim under the ADA, by proving: (1) that the complaining employee has a disability, or was regarded as disabled; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *Equal Emp't Opportunity Comm'n v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). If the EEOC can establish a *prima facie* case of discrimination, "a presumption of discrimination arises," and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Thereafter, if the defendant meets its burden, the burden of production shifts back to the EEOC to offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the [complaining employee's] protected characteristic (mixed-motive[s] alternative). *LHC Grp.*, 773 F.3d at 702 (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 640 (E.D. Tex. 2007) (applying this familiar *McDonnell Douglas* burden-shifting analysis to cases under the ADA)).

decision, the burden of persuasion shifts to the defendant who must prove that it would have taken the same action despite any discriminatory animus." *Nall*, 917 F.3d at 340.

Here, there is direct evidence that T&T made its employment decision on the basis of Woods's disability. T&T admits that it terminated Woods and refused to rehire him because of his cancer and treatment. Because T&T admits that it discriminated, this Court need not employ the *McDonnell Douglas* test. *See Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 762 (5th Cir. 1996) (*McDonnell Douglas* test inapplicable where there was direct evidence employer removed employee from his duties because of his disability). However, T&T contends that it had a reason to discriminate against Woods – namely, Woods would be a ***direct threat*** to safety and his termination was a ***business necessity*** because his cancer and treatment disqualified him from diving under the criteria outlined in the ADCI guidelines and T&T's diving handbook.

  **1.**   **Direct threat**

Although there is direct evidence of discrimination, the EEOC must still demonstrate that Woods was qualified for the job. *See Rizzo*, 84 F. 3d at 763. A qualified employee must be able to either "perform the essential functions of the job in spite of his disability" or show that "a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job." *Nall*, 917 F.3d at 342 (quotation marks and citations omitted). An essential function "bears more than a marginal relationship to the employee's job." *Id.* (quotation marks and citations omitted). In evaluating whether a function is essential, courts consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

Whether an employee is qualified is directly related to the question whether the employer is entitled to a "direct threat" defense.[58] *Nall*, 917 F.3d at 342. "An employer is entitled to a direct threat defense if an employee poses a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Id.* (quotation marks and citations omitted). "The objective reasonableness of the employer's actions" determines whether the employer has properly concluded that the employee poses a direct threat. *Id.* (citing *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) (observing that "courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments")). "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job.'" *Id.* (quoting *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86 (2002) (quoting 29 C.F.R. § 1630.2(r)) (brackets omitted). Conversely, the direct threat defense cannot rest on the employer's "categorical conclusion that an employee with a particular disability cannot safely perform a job." *Id.* at 344 (citations omitted). Applying here the Fifth Circuit's framework for analysis set out in *Nall*:

> the question … is not whether it was reasonable for [T&T] to conclude that an employee [who had cancer that was treated with chemotherapy, radiation, and surgery] could pose a direct threat; the question is whether [T&T] reasonably concluded that [Woods] posed a direct threat via an individualized assessment that relied on the best available objective evidence … More precisely, the question is whether there is any evidence in the record that creates a genuine issue of material fact as to whether [T&T] meaningfully assessed [Woods's] ability to perform his job safely and reasonably concluded that he posed a direct threat.

*Id.*

---

[58] The Fifth Circuit has repeatedly declined to "reach the question of which party bears the burden of proof regarding the direct threat defense." *Nall*, 917 F.3d at 343 n.5 (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 213 & n.4 (5th Cir. 2000)). Assuming *arguendo* that the EEOC bears the burden at this stage, it has satisfied it. *See id.*

The evidence before the Court on this summary-judgment record shows that there are genuine issues of material fact regarding whether T&T meaningfully assessed Woods's ability to perform his job safely based on the best available objective evidence and reasonably concluded that Woods posed a direct threat. Considering the evidence before the Court that T&T relied on the advice of a physician who did not examine Woods or his medical records before firing him, a reasonable jury could find that T&T did not make an individualized assessment of Woods's actual ability to perform safely the essential functions of the job. Whether T&T relied on the best available objective evidence of Woods's condition is a disputed issue of material fact because Woods's treating physician cleared him for diving shortly after T&T fired him and T&T refused to rehire Woods based upon the treating physician's clearance. On the record before the Court, it is not enough to garner judgment as a matter of law for T&T to point to the ADCI guideline on malignancies and a five-year waiting period. Indeed, T&T itself allowed Woods to dive after his chemotherapy and radiation treatments when it was aware of Woods's cancer. Moreover, after T&T fired Woods post-surgery, he was soon employed by another company as a diver after passing a pre-employment physical, thus evincing a factual dispute as to whether his condition poses a direct threat to safety. Therefore, T&T is not entitled to summary judgment on its direct-threat defense.

**2. Business necessity**

Under the ADA, an employer may assert as an affirmative defense qualification standards shown to be "job-related for the position in question and … consistent with business necessity." 42 U.S.C. § 12112(b)(6). The ADA further explains this business-necessity defense as follows:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business

13

> necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

*Id.* § 12113(a); *cf. Echazabal*, 536 U.S. at 78 (explaining that §§ 12112(b)(6) and 12113 create an affirmative defense for standards shown to be job-related for the position in question and consistent with business necessity). The Fifth Circuit has explained this defense as follows:

> Once an employee shows that a qualification standard tends to screen out an individual with a disability, the employer shoulders the burden of proving that the challenged standard is job-related and consistent with business necessity.
>
> To show a business necessity defense, a defendant must prove by a preponderance of the evidence that its qualification standards are: (1) uniformly applied; (2) job-related for the position in question; (3) consistent with business necessity; and (4) cannot be met by a person with plaintiff's disability even with a reasonable accommodation. For a qualification to be job-related, the employer must demonstrate that the qualification standard is necessary and related to the specific skills and physical requirements of the sought-after position. Similarly, for a qualification standard to be consistent with business necessity, the employer must show that it "substantially promotes the business's needs. We have stated, concerning safety-based qualification standards, that in evaluating whether the risks addressed by a safety-based qualification standard constitute a business necessity, the court should take into account the magnitude of possible harm as well as the probability of occurrence. The acceptable probability of an incident will vary with the potential hazard posed by the particular position: a probability that might be tolerable in an ordinary job might be intolerable for a position involving atomic reactors, for example. In short, the probability of the occurrence is discounted by the magnitude of its consequences.

*Atkins v. Salazar*, 677 F.3d 667, 681-82 (5th Cir. 2011) (internal quotations, citations, indentation, and brackets omitted).

T&T cites the ADCI consensus standards and T&T's diver's handbook as the qualifications standards upon which it relied as a business necessity to bar anyone who has had cancer or cancer treatments (chemotherapy, radiation, and surgery) from being a diver for five years after the occurrence. T&T does not contend that these standards are imposed as a matter of federal or other law. Yet, a case can be made that they are job-related and a business necessity. T&T does so by citing OSHA and Coast Guard approval of the ADCI guidelines, emphasizing

14

the dangers of diving, and claiming that the standards are necessary to protect the safety of the affected diver and others. But a case can be made that contested issues of fact preclude a finding that the above-quoted test for the business-necessity defense has been satisfied. T&T has not demonstrated conclusively, without factual dispute, that the ADCI and handbook standards are uniformly applied, job-related, and consistent with its business necessity, or that there was not some reasonable accommodation available. After all, the rationale for these standards (*i.e.,* that nobody can safely dive for five years after having cancer and treatments) is belied by Woods's having done so for T&T, post-treatment and pre-surgery, and for other companies, post-surgery, since being fired by T&T. These disputed facts must be left for trial. Thus, T&T is not entitled to summary judgment on its business-necessity defense.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that T&T's motion for summary judgment (R. Doc. 19) is DENIED.

New Orleans, Louisiana, this 29th day of April, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE